JOHN RANKIN ET AL. V. BEATRICE BELL.

No. 7201.

1. **Evidence— Harmless Error.**—Suit for damages for the conversion of cattle in a given brand. A bill of sale was offered, and over objection admitted, conveying a number of cattle to plaintiff with the named brand and also another brand upon them. It appeared that the cattle seized were only in the given brand. *Held*, that the error in admitting the bill of sale was harmless.

2. **Evidence—Hearsay.**—The plaintiff claimed title to the cattle for seizure of which damages were sought under G. A. and wife H. Anderson. It was incompetent to admit declarations of H. Anderson that she did not claim the cattle, and that they belonged to plaintiff; the declarations were not made in presence of any of the parties in interest. There was evidence that the cattle were claimed by H. Anderson and her husband subsequent to the date of the alleged sale, and the testimony was conflicting. *Held*, the testimony was hearsay, and in the conflict of testimony it can not be held to have been immaterial, and its admission is ground for reversal.

3. **Exemplary Damages.**—A deputy United States marshal, who also was agent for a land company, levied upon the cattle under an execution for costs against the parties under whom plaintiff claimed. There was some evidence tending to support a claim for exemplary damages against the deputy. There was no evidence that the land company either directed the levy or subsequently approved it. *Held*, that a judgment for exemplary damages against the land company was not supported by the evidence, and was error.

4. **Unrecorded Mark and Brand.** — Under the statutes of this State (Revised Statutes, articles 4556–4561), which regulate marks and brands and their record, a parol sale of a recorded mark and brand must be held to be just as ineffectual to pass the title to a mark and brand of cattle, as would be a verbal transfer of real estate, which is likewise governed exclusively by statutory provisions.

5. **Sale of Cattle.**—Without selling the mark and brand, it is competent, however, to prove a sale and actual delivery of branded cattle not including the whole of the stock so branded, but such sale passes no title to the brand as evidence of title.

6. **Purchase of Cattle without Purchasing Brand.**—It is competent to prove the equitable or real ownership of cattle in a brand recorded in another's name. The increase of such would follow the stock purchased, and a levy and sale of such stock, as the property of the owner of the brand, would pass no title against the real owner. There is no statute making them liable for debts of the owner of the brand.

APPEAL from Maverick. Tried below before Hon. WINCHESTER KELSO.

*L. L. Martin*, for appellants.—1. Where a party seeks to introduce a mark and brand upon cattle as evidence to prove identification or ownership of the cattle in question in suit, preliminary proof that the mark and brand is recorded in the county in the name of the claimant is absolutely necessary. The plaintiff in this case alleged in her petition the HA brand, and the mark crop in each ear, also the mark crop in left ear and upper-bit in right ear, as the only description and mark of identification by which her cattle may be known, and by which she expected to recover them as her cattle; and except such brand and mark is recorded in Maverick County in her name, the same is not recognized in law as any evidence of ownership of said cattle in the plaintiff, or any evidence of identification of same to establish such right and ownership in the plaintiff. Rev. Stats., arts. 4556, 4557, 4559, 4561; Herber v. The State, 7 Texas, 69; Allen v. The State, 42 Texas, 517; Burke v. The State, 25 Texas Ct. App., 172; Thompson v. The State, 26 Texas Ct. App., 476; Black v. Vaughan, 70 Texas, 47; Schneider & Co. v. Fowler, 1 W. & W. C. C., sec. 858.

2. Conversation between a witness and a third person, not in the presence of a party to the suit against whom the substance of such conversation is sought to be used, is not admissible in evidence; and it is error to permit it to go to the jury when an objection to such evidence is made at the trial. Tucker v. Hamlin, 60 Texas, 171; Ross v. Kornrumpf, 64 Texas, 395; McClure v. Sheek's Heirs, 68 Texas, 429.

3. Minors, like adults, if they are the owners of cattle, must have a recorded brand and mark; and no brand and mark, except it be recorded as provided by law, is recognized in law as any evidence of ownership of the cattle upon which the same may be used. And upon general princi-

ples, if nothing else, whatever is required by law to be recorded is, when duly recorded, notice of the matters contained therein; therefore the record of a mark and brand in the county where the stock is ranging is notice to the world of title to the stock in the person in whose name the mark and brand is recorded. Rev. Stats., arts. 4557, 4561; Schneider v. Fowler, 1 W. & W. C. C., sec. 858; Poag v. The State, 40 Texas, 151; Thompson v. The State, 26 Texas Ct. App., 476; Crayton v. Munger, 9 Texas, 285.

*Dan W. Nicholson* and *Clark & Old,* for appellee.—1. Defendants having introduced in evidence a deed of trust from George and Hannah Anderson to C. A. Windus, conveying the cattle of plaintiff, as tending to show that the cattle belonged to George and Hannah Anderson, it was not error to permit plaintiff to prove in rebuttal Hannah Anderson's declaration to J. A. Bonnet that the cattle belonged to plaintiff. Wright v. Linn, 16 Texas, 43; Weisiger v. Chisholm, 22 Texas, 670.

2. Upon the sale, alienation, or transfer of cattle by any person in this State, the actual delivery of such animals shall be accompanied by a written transfer from the vendor to the purchaser, describing said animals; when this is done the law does not require the bill of sale to be recorded in order for the purchaser to acquire title; the law only imposes the burden on the party having the possession of cattle without a written transfer to prove title. Rev. Stats., arts. 4562, 4563; Wells v. Littlefield, 59 Texas, 556.

3. It is only when cattle run in the range, and are sold by range delivery, by a sale and delivery of the brands and marks, that the purchaser, in order to acquire title thereto, must have his bill of sale recorded in the county clerk's office and the transfer of the mark and brand noted on the record of original marks and brands in the name of the purchaser. Rev. Stats., art. 4564; Black v. Vaughan, 70 Texas, 47; Wells v. Littlefield, 59 Texas, 556.

MARR, JUDGE, *Section A.*—This is a suit which was filed in Maverick County District Court on the 27th day of May, 1889, by Beatrice Bell as plaintiff, a minor suing by her next friend, W. A. Bonnett, and against John T. Rankin, United States Marshal for the Western District of Texas; C. A. Windus, his deputy; A. T. Bradshaw, John W. White, and Walter W. Little, the sureties on Rankin's official bond; and the New York and Texas Land Company, Limited, a corporation doing business in the State.

The plaintiff's cause of action as alleged, stating it here briefly, was, that the defendants had, by and through C. A. Windus, who acted at the time as deputy United States Marshal and also as agent of the New York and Texas Land Company, Limited, levied upon and sold and drove away out of the possession of plaintiff, and converted, 67 head of

cattle, branded HA, ear marked crop in each ear, and also crop in the left ear and an upper-bit in the right ear; that also said Windus acted maliciously and willfully in said sale; which said act has been ratified by his principals, etc. Plaintiff praying in her petition for actual damages in the sum of $804, and exemplary damages in the sum of $1150.

The levy by Windus as deputy United States Marshal was made by virtue of an execution issued upon a judgment rendered in the United States Circuit Court for the Western District of Texas, in favor of said land company, and against George and Hannah Anderson, for certain lands and all costs of suit. The execution was issued for the costs of court, amounting to the sum of $134.89, in January, 1889, and the cattle were seized and levied upon under the writ as the property of the said defendants in the original suit.

The defendants in this case denied the trespass, and interposed a general denial, and claimed that the cattle in dispute in fact belonged to said George and Hannah Anderson, who are husband and wife, or to said Hannah alone, and not to the plaintiff.

The case was tried on the 31st day of May, 1889, by a jury, and the result was a verdict against John T. Rankin, C. A. Windus, and the New York and Texas Land Company for $156 actual damages, and $344 exemplary damages against C. A. Windus and the New York and Texas Land Company.

The defendants have appealed and assigned errors. We deem it most convenient not to consider these assignments in the order in which they are presented in the brief.

It is contended in the third assignment of error, that the court erred in permitting the plaintiff to introduce the bill of sale to herself from George and Hannah Anderson, executed in December, 1884, to 10 head of cattle branded "HA on left hip and EB on left side," because the bill of sale described different cattle from those sued for and described in the petition, and hence a variance between the allegations and the proof. Prima facie the objection would seem to have been well taken. The plaintiff, having described the cattle with unnecessary particularity by the marks and brands, was bound to prove the allegations.

It appears, however, almost conclusively, that none of the cattle which were taken and sold under the execution had the EB brand. All of them were branded HA, as alleged in the petition, except one cow, which was branded GA, and about which there is no dispute concerning the brand. There were but 26 head levied upon and sold, and 25 of these were branded as alleged in the petition. This much appears from the return of the officer and from the testimony of all of the parties who participated in the levy and sale of the cattle, as well as from the evidence of Levering, who purchased the cattle at the execution sale, and drove them to another county. He is positive that none of these cattle had the EB brand. It

is true that the plaintiff, in her testimony, in effect, claims that the officer took 66 head, and that some of these had the EB brand, but she admits that she does not, in fact, know how many were taken. It is evident, from the amount of the verdict for actual damages, viewed in connection with the evidence and the charge of the court, that the jury found that only 26 of her cattle had been taken by the defendants, and those, as we have seen, had the brand alleged in the petition; and hence the admission of the bill of sale becomes a harmless error, for which the judgment ought not to be reversed.

Besides, for aught that appears, the cattle which were actually taken, or at least some of them, may have been the increase from the original 10 head described in the bill of sale; and if so, under the peculiar circumstances of this case, that instrument was admissible for the plaintiff in showing her title under Hannah and George Anderson, and in that contingency there would be no variance as to such cattle. In fact, no variance can arise unless the plaintiff attempts to recover for some of the original 10 head of cattle mentioned in the bill of sale. In that event the allegations of the petition are not such as would justify the admission of the proof, because these cattle, as described in the bill of sale, had both of the brands, and not merely the HA brand.

Complaint is made in the fourth assignment of error by counsel for the appellants, that the court erred in admitting the following testimony, which was objected to by the defendants as hearsay, etc., viz.:

J. A. Bonnett, a witness for the plaintiff, in his direct examination, said that Hannah and George Anderson were in debt to him, and he was getting uneasy, and he wanted to secure himself, and that Hannah Anderson told him she had nothing but sheep, and he took a mortgage on them. Then the attorney for the plaintiff asked the following question: "Who did Hannah Anderson say owned the cattle?" The defendants' attorney objected to the question; the court overruled objection; the witness answered: "Hannah Anderson told me the HA cattle belonged to Beatrice Bell, and I would not take any mortgage on them. None of the defendants were present when she told me this."

The statement of Hannah Anderson was made to this witness subsequent to the time of the alleged sale of the cattle to the plaintiff by Hannah Anderson.

We are of the opinion that this evidence was hearsay, *res inter alias acta*, and clearly inadmissible for any purpose, so far as the record discloses. Tucker v. Hamlin, 60 Texas, 171; Ross v. Kornrumpf, 64 Texas, 395; McClure v. Sheeks' Heirs, 68 Texas, 429.

It is insisted, however, by the counsel for the appellee, that the error, if any, is harmless, and the ruling immaterial, because they claim that plaintiff otherwise conclusively established her right to the cattle, and thus excluded any title thereto in the defendants in the writ of execution.

In view of the evidence, as shown by the record, we do not think that position can be sustained. While the testimony is more or less conflicting, still the defendants proved many facts and circumstances tending strongly to show that the cattle levied upon in fact belonged at the time to Hannah Anderson, or to her and her husband George; and this issue was submitted by the court to the jury. We have no means of knowing what effect the testimony of the witness Bonnett had upon the jury, or to what extent it influenced their decision. It probably had considerable weight with them, under the circumstances of this case; at least we would not be justified in holding that it had none.

It was shown that all of the cattle taken but one were branded HA, and that this brand still stands upon the county records in the name of Hannah Anderson. It was duly recorded for her in 1883, and the record shows no transfer of the brand or mark. The plaintiff did not introduce any written transfer of the brand to herself, but proved that in 1884 Hannah Anderson sold her the mark and brand by parol and delivered to her the branding iron, and that since that time this brand has been used in branding her cattle or the cattle which she claims. The record shows further, that in 1882 another brand was duly recorded for and in the name of the plaintiff, apparently to be used only upon horses. It has not been used upon any of the cattle. It is the only brand upon the record in the name of the plaintiff. She is and has been an inmate of the family of George and Hannah Anderson "ever since she was three months old." She is a niece of Hannah and an adopted daughter of one John Bell. At the time of the trial she was "in her twentieth year." There is evidence that Hannah Anderson had used and controlled the cattle after the alleged sale to the plaintiff. Of course there is some conflict in the evidence on this point. The cattle were ranging at the ranch of Hannah Anderson, and different parties appear to have been in the habit of doing the branding when necessary. She and her husband gave mortgages on the cattle after the time when it is claimed they had been sold to the plaintiff; but the plaintiff testified on this point that ",she loaned the cattle to her aunt to be mortgaged," and that if they had been "sold under the mortgage she would not have claimed them."

We have been unable to find in the record any proof of the consideration of this alleged sale from Hannah to the plaintiff. What, if anything, was paid, or whether the plaintiff was possessed of any means in 1884 with which to purchase the cattle, does not appear. The record also leaves it uncertain whether all of the cattle which were taken were the increase of the original 10 head obtained from Hannah Anderson, or of these and of other cattle acquired from other sources.

We make the following extracts from the testimony of George Anderson, who testified for the plaintiff, viz.: "I have known Beatrice Bell all

of her life.  She had cattle last February (1889).  I think about 50 head.  Part of them she got from my wife.  She got 11 head from her father in 1884; that would make 42 head all together, branded EB, GA and HA, and HA was the holding brand.  The original owner of EB was Robert Bell.  He is dead," etc.

It is not shown what relation Robert Bell was to the plaintiff, or if so, we have not been able to find it.

The witness continues elsewhere on cross-examination: "I do not know how many (cattle) Beatrice Bell had.  I said about 50 or 60 head, more or less.  She had some in December, 1884.  Of course she had cattle in 1884, for my wife sold her the HA brand in June, 1884, and turned over the iron.  She had about 40 or 50 head in January, 1885. * * * I do not know how many were rendered for taxes, if any.  I know that she had 20 head of cattle on the first of February, 1889."  (The levy was made on February 4, 1889.)  "If the rolls show 40 or 50 head, then there was that many.  I am positive that the whole brand, mark, and cattle were sold by my wife to Beatrice Bell.  I have mortgaged 2000 sheep to Mr. Bonnett.  The sheep I mortgaged belonged to Beatrice Bell and Hannah Anderson, and I told Mr. Bonnett so at the time of giving the mortgage."  This witness also said upon his examination in chief that "the plaintiff gave her consent to the mortgaging of the cattle" (not sheep) before mentioned.

We have not attempted to state all of the evidence bearing upon the issue of ownership, but have stated enough, as we think, to show that it was by no means conclusively proven that plaintiff was the bona fide or actual owner of the cattle in dispute at the time of the levy.  We conclude that the admission of the testimony of the witness Bonnett, over the objections of the defendants, was a material error, for which the judgment should be reversed.

It is also contended by the appellants that the evidence is insufficient to support the verdict for exemplary damages, either against Windus or the New York and Texas Land Company.  If the cattle levied upon belonged to the plaintiff, and Windus was consequently liable at all, then there was some evidence tending to establish his liability for punitory damages also; and as the case will be remanded, we deem it best to express no opinion as to the sufficiency of the evidence on this point.  But we do not hesitate to hold that the testimony is clearly insufficient to warrant the assessment of exemplary damages against the land company.  There is no evidence to show that this company authorized the levy of the execution or ratified it afterward, but the contrary is proved by the testimony of Windus, who was the sole witness on this point.  He also testified, that in making the levy he was acting solely as an officer, and not as the agent of the company; that he was its agent in reference to lands and the collection of rents, but that the land company did not authorize

the levy nor receive any of the proceeds of the sale. Another witness, who helped gather the cattle, testified that Windus said to him, "Make out your bill against the company;" but this was only a trifling circumstance and was denied by Windus. Under such circumstances the liability of the company for the levy at all might be doubted, and a fortiori it is not liable for punitory damages. Tynberg & Co. v. Cohen, 67 Texas, 220; 76 Texas, 409; Bernheim v. Crum, 62 Texas, 401; Railway v. Garcia, 70 Texas, 207; Brown v. Bridges, 70 Texas, 661; Freem. on Ex., secs. 273, 303.

In addition to the assignments which have been already considered, the appellants present the following two, which may be considered together, namely:

"The District Court erred in permitting the plaintiff, Beatrice Bell, while on the witness stand in her own behalf, to identify the cattle in question, and show ownership in same by testifying, over the objection of defendants, that the HA, crop in each ear, was her brand and mark, and that brand was the brand and mark upon the cattle driven off by Windus, without any proof or evidence that said brand and mark were of record in Maverick County in her name, as required by law, before said cattle could be in any manner identified and known as plaintiff's cattle by said brand and mark."

"The court erred in refusing to allow the second special instruction requested by the defendants, and which is as follows: 'You are instructed that minors owning cattle separate from their parents or guardian must have their brand and mark recorded in the brand and mark record of the county in which the cattle are running; and no brands except such as are recorded are recognized in law as any evidence of ownership of the cattle upon which the same may be used. Therefore, if the jury find that the HA brand was recorded in the brand and mark record of Maverick County in the name of Hannah Anderson before and at the time of the levy of the execution by the deputy marshal on said stock of cattle, and not in the name of Beatrice Bell, the plaintiff, then and in that case the jury are instructed that the record of said brand in the name of Hannah Anderson is evidence of the title and ownership of the stock of cattle branded in the same in the said Hannah Anderson.'"

First. When the above proof was made no record of the brand had been shown, but subsequently the defendants introduced a certificate of the record of the brand and mark in the name of Hannah Anderson. Under the statute an unrecorded brand is not evidence of ownership, and the record of the brand can not be proved by parol. Rev. Stats., art. 4561; Elsner v. The State, 22 Texas Ct. App., 687. The plaintiff ought not to have been allowed to state that she was the owner of the HA brand without proof of its record, and that it was recorded in her name, or that she had duly acquired the title to the brand from the party in whose name

it was recorded.    But, as we have just seen, the defendant established the proper record of the brand in the name of Hannah Anderson.   It therefore was made to appear in the progress of the trial that the brand was duly recorded, and consequently was at least evidence of ownership in Hannah Anderson, under whom the plaintiff claims title.   The plaintiff also proved by both George and Hannah Anderson a parol sale of the brand and mark from Hannah Anderson to herself, and the testimony of these two witnesses does not appear to have been objected to by the defendants.   The bill of exceptions applies only to the admission of the plaintiff's own testimony on the point, which is less circumstantial than that of the other two witnesses.

The admission of their testimony without objection destroys the force of the objection to the testimony of the plaintiff, because the same fact is otherwise established.   Had the proper objection, however, been interposed to the testimony of all three of these witnesses upon the ownership of the mark and brand, then we think it should have been sustained by the court.    We will notice the point, because, as will be seen, the special instruction number 2 above noted presents almost the same question.

We are of the opinion that under the statutes of this State which regulate marks and brands and their record, that a parol sale of a recorded mark and brand must be held to be just as ineffectual to pass the title thereto as would be a verbal transfer of real estate, which is likewise governed exclusively by statutory provisions.   Rev. Stats., arts. 4556–4561, 4564; Black v. Vaughan, 70 Texas, 47; Penal Code, arts. 761, 762, 783.

The manifest effect of the law is, that the record of marks and brands shall show who are the owners thereof, and we think that the proper interpretation of article 4564, above quoted, leads to the conclusion that that article was intended to provide the mode of transferring the marks and brands upon such animals as are specified in article 4562, and to prescribe what shall constitute sufficient evidence of " the sale and delivery" of such " brands and marks."   We think that this much may be inferred not only from the language of the statute, but from the decision of the Supreme Court in Black v. Vaughan, supra.   It is evident to our minds that this article is designed to regulate the transfer of the title to the mark and brand themselves, which would carry with it title to all of the stock in that mark and brand, when the provisions of the statute are fully complied with by the vendee.   It will not admit of the construction that a certain number of cattle, less than the whole stock in that brand, may be disposed of " as they run in the range," by a bill of sale which describes them by the mark and brand, and that the vendee or purchaser only acquires title to the mark and brand to that extent.   The transfer of the mark and brand entirely is contemplated, and as a necessary consequence the title to all of the animals in the mark and brand, upon compliance with the statute, passes to the purchaser; otherwise there would be two,

and possibly several, distinct owners of the same brand and mark, which is positively prohibited by another article of the statute.    Art. 4570.

The statute provides that the transfer shall take place by " sale and delivery of the *brands* and *marks*," and that the conveyance or bill of sale shall be recorded, etc., "and such sale or transfer" of the brand and mark "shall be noted on the record of the original marks and brands in the name of the vendee or purchaser."    Upon complying with these provisions of law the purchaser obtains the title to the brand and mark and to the animals in that mark and brand, without the necessity of any actual delivery of the live-stock, which would otherwise be necessary to acquire title; but if the animals are upon the range when sold, the purchaser acquires neither the title to the cattle (as was held in Black's case, supra), nor to the brand and mark, as we think, without complying with the directions of the statute.    And furthermore, we do not think that he obtains any title to the mark and brand as contradistinguished from title to the animals purchased, even if the latter are actually delivered, unless he also obtains a written transfer to the mark and brand, and otherwise complies with article 4564.

The bill of sale from Hannah Anderson to the plaintiff was not a transfer of the marks and brands, but only of the 10 head of cattle, as before explained.    Of course, under article 4562, the bill of sale was sufficient to pass the title to these cattle (not to the marks and brands), if there was an actual delivery of the cattle to the plaintiff, or if she or any one for her took immediate possession thereof; and in case of the absence of a bill of sale, the transaction is but prima facie illegal, and the sale of the cattle may be otherwise sustained by proof if they were actually delivered to the purchaser.    Rev. Stats., art. 4563; Wells v. Littlefield, 59 Texas, 556.

We conclude that the plaintiff failed to legally prove any title to the HA brand and its accompanying mark.    But it does not necessarily follow that under the facts of this case the court should have given the foregoing special instruction, as suggested by the defendants.

Second.    We have reached the conclusion (but not without some difficulty) that this special instruction ought not to be given without at least some qualification, in view of the other evidence which was introduced by the plaintiff to identify the cattle and prove her title thereto, independent of the mark and brand.    It is true that the title to the HA brand, as we have seen, still remained in Hannah Anderson, notwithstanding the parol sale thereof, and its introduction from the record afforded prima facie evidence of ownership in her of the cattle so branded; and to this extent the court might perhaps have instructed the jury.

The first two propositions of the instruction under consideration are absolutely correct.    Rev. Stats., arts. 4557, 4561.    It will be remembered that the cattle levied upon were in all probability increase of the original

ten head which had been transferred to her by Hannah Anderson, and of such as she had obtained from her father, perhaps. We find no proof, however, that she was the owner of either the EB or GA brand. It was proved, however, that the HA was " the holding brand upon all of her cattle," and this was the sole brand upon any of the cattle which were taken by the defendants, except one cow, as we have seen. She introduced sufficient verbal testimony, however, if credited by the jury, to identify the cattle as her own, and to show that at least the equitable title to all of the cattle in the HA brand was in her, and that the officer was notified of this fact before he made the levy; but the evidence conflicts on this last point. She was evidently using upon all of the cattle, as the ostensible evidence of her ownership, a brand which the record disclosed belonged to another person. The increase of all of her original stock appear to have been branded exclusively in that brand. In this state of the case we think that the title to this brand, and also the prima facie ownership of or apparent title to the cattle levied upon, other than those acquired by actual sale and delivery to the plaintiff, if any, must be held to be in Hannah Anderson. But we think the superior title even as to these (the increase) is in the plaintiff, if the testimony introduced by her should be credited, which is a question of fact for the jury. Of course, as to those cattle which she originally acquired by sale or gift and actual delivery, if any, the complete title thereto would be in her, notwithstanding the fact that the brand or brands on such cattle still appeared of record in the name of some other person, as we have before intimated. We further hold, that even as to those cattle which were the increase of the original stock, and which had been branded in the HA brand, the plaintiff was entitled, as against all of the defendants in this case, whether they had notice of her claim or not before the levy, to show if she could, by any competent proof, the existence of the trust or real title in her favor, and thus establish the superior right to such cattle. The officer levied at his peril, aside from any question of estoppel by voluntary conduct upon the part of the plaintiff at the time of the levy, which is not involved; and the statutes before quoted, nor any other of which we are aware, do not protect the creditor without notice, as do the statutes in relation to an unregistered conveyance of land.

We have found no provision of law which declares that any live-stock which belongs to one person, but which are in fact branded in the recorded brand of another, shall, as to creditors and purchasers without notice, be deemed the property of such other person, etc. The presumption of ownership, therefore, in Hannah Anderson is not a conclusive one, but may be repelled by proof. Grace v. Wade, 45 Texas, 522; Freem. on Ex., secs. 253, 254; Schneider & Co. v. Fowler, 1 W. & W. C. C., secs. 856–858. See also Parker v. Coop, 60 Texas, 111. Under the common law rule used in the absence of statutory regulations on this subject

as to the effect of the levy upon personal property, the levy of the execution, and the lien obtained thereby, could only operate upon the real interest which the defendants in the writ had in the property.   Freem. on Ex., secs. 335, 336.

We need not determine whether the rule would be otherwise in a case like the present as to an innocent purchaser without notice and for value, because that issue is not involved in this controversy.   Rev. Stats., art. 2318.

We conclude that it was not error for the court to refuse the special instruction number 2, in the shape in which it was suggested, and that on account of the other errors, as before indicated, the judgment should be reversed and the cause remanded.

*Reversed and remanded.*

Adopted March 24, 1892.