## WILLIS v. FIRST NAT. BANK OF LITTLEFIELD. (No. 3282.)

Court of Civil Appeals of Texas. Amarillo. Oct. 9, 1929.

Rehearing Denied Oct. 30, 1929. Application for Writ of Error Refused Dec. 18, 1929.

Rob't A. Sowder, of Lubbock, for appellant.

E. A. Bills, of Littlefield, and Bean & Klett, of Lubbock, for appellee.

JACKSON, J. The First National Bank of Littlefield, the appellee, filed this suit in the district court of Lamb county, Tex., against C. E. Willis, the appellant, to recover on a promissory note dated May 11, 1927, executed by appellant and payable to appellee on November 11, 1927, in the sum of $1,330, with interest thereon from maturity at the rate of 10 per cent. per annum until paid, and providing for the usual attorney's fees.

The appellant answered by general demurrer, general denial, and pleaded as a defense to the note sued on: That about January 26, 1925, the Littlefield State Bank of Littlefield, Tex., duly and legally incorporated under and by virtue of the laws of this state, desired to, increase its capital stock and issued and delivered to appellant 10 shares of such increased capital stock for the sum of $1,200. That appellant executed his demand note therefor, payable to said State Bank. That on December 7, 1925, said note was renewed by a demand note executed by appellant and payable to said Littlefield State Bank for the sum of $1,300. That said note dated January 26, 1925, and the renewals thereof, is all the consideration ever paid by appellant for said capital stock in the Littlefield State Bank. That appellee purchased the renewal note appellant had given for capital stock to the Littlefield State Bank after its maturity, with full knowledge of the consideration for which said note was given, and the note sued on is a renewal of the note given to the Littlefield State Bank for capital stock. That the note given by appellant to the Littlefield State Bank for capital stock in said institution was illegal and void, and, by reason of the acquisition thereof by appellee after its maturity and with full knowledge of the purported consideration therefor, appellee is not a bona fide holder and is charged with the illegality and fraud in the issuance of said stock, and is therefore not entitled to recover upon the note sued on.

The appellee, by supplemental petition, pleaded general demurrer and general denial, and, in answer to appellant's plea of the illegality of the note sued on, alleged: That, at or about the time appellant executed the

first note to the Littlefield State Bank, he was issued stock therefor in said bank and became a stockholder therein and continued as such stockholder in said bank until the latter part of the year 1926, when it was discovered that said bank was in failing financial condition, and had a lot of paper and notes that were practically worthless. That the officers and stockholders of the Littlefield State Bank had an opportunity to sell said bank and its assets to appellee, provided the stockholders and those interested in said bank would pay into the said State Bank an amount exceeding $30,000 or execute good and valid notes for said amount and turn them in to said institution. That various stockholders of the Littlefield State Bank did execute notes and turn them in to the Littlefield State Bank or pay cash to said bank, in order to place the finances of said institution in a condition that a sale of its assets could be made to the appellee, after which the purchase of the assets of the Littlefield State Bank by appellee was consummated. That, in the said sale and transfer, appellee assumed the obligations of the Littlefield State Bank, among which were bonds of indemnity upon some of which the appellant was surety. That if the appellee had not purchased the assets of the Littlefield State Bank and assumed the payment of the liabilities of said institution, said bank would, in all probability, have been liquidated and the appellant and other stockholders would have been compelled to pay out money on the bonds which they had signed as sureties and to pay assessments, because they were stockholders, to said institution. That appellant, after the issuance of stock to him by the Littlefield State Bank, held himself out to the public and those dealing with said institution, as a stockholder therein. That appellant, as a stockholder, participated in the sale of the assets of the Littlefield State Bank to appellee, and, after the consummation of the sale, renewed the note to appellee that he had theretofore given to the Littlefield State Bank, and, by his acts, acquiescence in the sale, and conduct in holding himself out and representing himself to appellee and others as a stockholder in the Littlefield State Bank, estopped himself from denying the validity of the note given to the Littlefield State Bank and the renewals thereof to appellee, but for which acts, acquiescence, and conduct upon the part of appellant, the appellee would not have purchased said note.

The case was submitted to the court without the intervention of a jury, and he rendered judgment that plaintiff recover against the defendant on the note sued on, from which judgment this appeal is prosecuted.

The testimony and the findings of the court, supported by the evidence, discloses: That in January, 1925, appellant was issued and delivered capital stock of the face value of $1,000, in the Littlefield State Bank, for which he executed his demand note for the sum of

$1,200. That on December 7th, thereafter, this note was renewed by a demand note for the sum of $1,300, executed by appellant and payable to the Littlefield State Bank. That appellant advised parties that he was a stockholder in the bank, and the record shows that appellant attended stockholders' meetings, participated in such meetings, and as a stockholder on two occasions voted in the elections of directors. That in December, 1926, immediately preceding Christmas, a considerable number of depositors of the Littlefield State Bank withdrew their deposits. That at the close of business on December 23, 1926, the bank was, if not insolvent, in such financial embarrassment that it could not open for business on December 24th. That by agreement between the officers of the Littlefield State Bank and the officers of the First National Bank of Littlefield, the appellee herein, December 24th was considered a holiday, and neither of said banks opened for business. That both banks were closed on Christmas Day and the day following, which was Sunday. That during these three days the officers and directors of the Littlefield State Bank were endeavoring to make some arrangements by which they could secure financial assistance and protect the depositors, creditors, and stockholders of the bank. That the state bank examiner was called, went to Littlefield, investigated the assets, and informed the officers that he would not permit the Littlefield State Bank to open for business again without it could secure some additional cash and obtain good notes to the amount of $30,000 or $40,000, to be substituted for some bad notes held by the bank. That during this time negotiations were begun with the officers of the appellee, relative to the sale of the assets of the Littlefield State Bank to the First National Bank. That a national bank examiner was called, and he went to Littlefield, and, after an investigation of the assets of the State Bank, refused to allow the appellee to purchase the assets of said bank unless the stockholders thereof added to its assets about $30,000 in cash and the same amount in good notes, and some $30,000 to $40,000 of the bad notes held by the State Bank were charged off. That a meeting of some of the stockholders of the State Bank was had on the night of December 26th, and the morning of December 27th, for the purpose of finally determining whether the $30,000 in cash and the $30,000 in notes could be obtained, and whether the directors should transfer the assets of said bank to the First National Bank. This meeting was attended by the officers of the First National Bank and also by both the State and National bank examiners. That the appellant was called as a stockholder about 2 o'clock a. m., on December 27th, and came to said meeting. That the financial condition of the State Bank was explained to him, and he was advised by the officers of said bank that it would be necessary to raise about $30,000

in cash and an equal amount in notes before the bank could open for business at 9 o'clock on that morning. That said officers were endeavoring to sell the assets of the State Bank to the First National Bank, whose officers were present, but in order to consummate the sale it was necessary to raise the cash and notes above mentioned. That, if said sums were not raised, the Littlefield State Bank would be closed and appellant and the other stockholders would be liable for an assessment in the amount of the value of their stock, and, he would also be liable on his bond to the state of Texas for the payment of all the obligations outstanding against the Littlefield State Bank. That if he would execute an additional note, properly secured, for the sum of $1,000, he would be relieved from further liability as a stockholder and on the bond. That the other stockholders present were signing notes, and one of them was placing $30,000 in cash in the bank to increase its assets. The appellant executed an additional note for $1,000, together with his deed of trust on certain real estate, securing the payment thereof.

Appellant testified: That he was present, and that it was the understanding that the appellee would take over the assets of the Littlefield State Bank and assume its liabilities, provided the $30,000 in cash and a like amount in notes were raised and placed with the assets of the said bank. That he knew at the time that his note for $1,300 was among the assets of the Littlefield State Bank that were being purchased by the First National Bank, but said nothing to the officers of the appellee with reference to the consideration for said note or any defense that he had thereto.

The transfer of the assets of the Littlefield State Bank to the First National Bank was consummated, among which was appellant's note. The First National Bank assumed and paid the obligations of the Littlefield State Bank, including the deposits of all depositors, other banks, municipalities, and individuals. That appellant has been relieved of all liability by virtue of his connection with the bank and the signing of its bonds and paid by the appellee the money he had on deposit with the Littlefield State Bank at the time it was transferred to the appellee. The note of appellant for $1,300, acquired by appellee in the purchase of the State Bank, was renewed by appellant on January 11, 1927, and made payable to the First National Bank of Littlefield, Tex., in the sum of $1,330. This note was again renewed by appellant on May 11, 1927, for the sum of $1,330, which is the note in controversy.

In the written transfer of the assets of the Littlefield State Bank to appellee, appellant's note was indicated to be due December 7, 1926.

Appellant, by his assignments, contends that, inasmuch as the uncontroverted testimony shows that the note transferred to appellee by the Littlefield State Bank was given for capital stock in said bank, and the uncontroverted evidence shows that appellee acquired such note after its maturity with full knowledge that said note was illegal and void, the renewal note sued on in the hands of appellee was also illegal and void, and the court committed error in rendering judgment against him on said renewal note.

The court failed to state whether he found, as a fact, that the note was transferred to appellee after maturity or not, but, if there was evidence to warrant such a finding, the presumption that he so found would prevail in support of his judgment. The note transferred to appellee by the State Bank was dated December 7, 1925, was payable on demand, and was transferred on December 27, 1926, and the transfer indicates that the note was considered due on December 7, 1926.

Rev. St. 1925, art. 5935, § 53, provides: "Where an instrument payable on demand is negotiated an unreasonable length of time after its issue, the holder is not deemed a holder in due course."

Rev. St. 1925, art. 5948, § 193, provides: "In determining what is a 'reasonable time' or an 'unreasonable time,' regard is to be had to the nature of the instrument, the usage of trade or business (if any) with respect to such instruments, and the facts of the particular case."

These provisions of the Negotiable Instruments Act make it a question of fact as to whether or not this note was transferred after maturity, and there is no testimony in the record as to the usage of the trade or business with regard to the note transferred, but we are inclined to the view that under the facts "of this particular case" the appellee acquired this note after maturity.

The record discloses without contradiction that appellee had no actual knowledge of any infirmity or defects in the note it purchased from the Littlefield State Bank. Neither did it have actual knowledge of any facts that amounted to bad faith on appellee's part in taking the note.

The note given by appellant to the Littlefield State Bank for stock was not void. Washer v. Smyer et al., 109 Tex. 398, 211 S. W. 985, 4 A. L. R. 1320; Thompson et al. v. First State Bank of Amarillo, 109 Tex. 419, 211 S. W. 977.

Does the purchase of the note by appellee, after its maturity, under the facts revealed by this record, defeat appellee's plea of estoppel? The various kinds and rules of estoppel in general apply to parties to commercial paper the same as in other transactions. Joyce's Defenses to Commercial Paper, vol. 2, § 921; Schauer et al. v. Von Schauer (Tex. Civ. App.) 138 S. W. 145.

Admissions made by the maker or indorser of a note after its maturity upon which the holder relied to his injury estops such maker or indorser from denying his signature.

Joyce's Defenses to Commercial Paper, vol. 2, § 937.

"One who by his words or conduct induces another to pursue a certain course of action in regard to commercial paper, and the words or conduct are of such a character as would justify a man of ordinary prudence in pursuing that course, may be estopped from showing that the facts which the other party has been thereby lead to believe exists did not in fact exist and consequently precluded from availing himself of a defense which would be inconsistent with the existence of such facts." Joyce's Defenses to Commercial Paper, vol. 2, § 939.

"There are some cases in which defenses which would avoid the instrument in any one's hands are rendered unavailable to the defendant by his own conduct—cases in which, to use the legal phrase, he is 'estopped' from pleading the particular defense which he endeavors to set up. 'An estoppel,' says Lord Coke, 'is where a man is concluded by his own act or acceptance to say the truth.' Thus, if a person who is negotiating with the payee or indorsee of a note for the purchase of it, inquires concerning its validity of the maker, and the latter assures him that the note is good, that he has no defense against it, that it is good business paper, or that it is all right and will be paid, the maker could not afterward plead that it was usurious or otherwise illegal, or failure or want of consideration, or any equity existing between himself and the transferrer." Daniel on Negotiable Instruments (6th Ed.) vol. 1, § 859.

"If a person by his conduct induces another to believe in the existence of a particular set of facts and the other acts thereon to his prejudice, the former is estopped as against the latter to deny that that set of facts did in truth exist." 21 C. J. 1060.

"The special circumstances here are that the appellant expressly consented to have, and knew, the two notes 'were placed among the assets' of the company, and that they 'were held out to the world and to the stockholders and creditors of said insurance company as valid and subsisting obligations.' The creditors dealing with the company could rely upon such notes, 'placed,' as they were, 'among the assets,' as being just and legally payable obligations; they could assume that the notes were such as the company were authorized to take and hold within the scope of its authorized business. Consequently all the elements of an estoppel in pais are present when it af-firmatively appears, as here, that appellant had knowledge of the facts, as well as the intention and admission, which would make the two notes in equity assets of the company so as to allow creditors to subject same to the payment of their debts. In these facts the want of a consideration could not, because of estoppel, be alleged and asserted as a defense." Stuart v. Mitchell (Tex. Civ. App.) 241 S. W. 713, 714.

The record discloses: That appellant had held himself out as a stockholder in the Littlefield State Bank, had advised people that he was such stockholder, had participated in stockholders' meetings, and voted in the elections of directors. That the Littlefield State Bank had liabilities exceeding its assets. That in order to open its doors for business, or to consummate a sale to appellee, it was necessary to increase the assets of said bank, of all of which the appellant was advised. That, after the cash was paid and additional notes given, the sale to appellee was consummated, and it purchased and paid value for the note of appellant which had been given for stock and which was transferred to it by the Littlefield State Bank. That appellant knew of the negotiations for the sale of said note with the other assets of the said bank, knew at the time that the note sued on was a part of such assets, that it was given for stock, and failed to inform the officers of the appellee of any infirmity of said note, but, on the contrary, acquiesced in the sale and participated therein to the extent of attending the meeting as a stockholder, in which the negotiations were had resulting in the sale and giving his additional note for the sum of $1,000, which was virtually an agreed assessment against him as a stockholder. That he knew when said additional note was given that it was for the purpose of assisting and enabling the Littlefield State Bank to transfer its assets to appellee and have it assume and pay off the obligations and indebtedness of the Littlefield Bank. The appellee did assume and pay the liabilities and the creditors of the Littlefield Bank, and, in our opinion, appellant's acts and conduct estop him from defeating appellee's note because it was a renewal of the note given by him for stock in a corporation. Mitchell v. Porter (Tex. Com. App.) 223 S. W. 197; McWhirter v. First State Bank of Amarillo (Tex. Civ. App.) 182 S. W. 682; Smith v. Ideal Laundry Co. et al. (Tex. Civ. App.) 286 S. W. 285.

The judgment is affirmed.