## COLEMAN et al. v. MOORE.

### No. 4182.

Court of Civil Appeals of Texas. Amarillo.
March 12, 1934.

M. M. Coleman and Clyde F. Elkins, both of Lubbock, for appellants.

Lockhart & Brown, of Lubbock, for appellee.

MARTIN, Justice.

Estell Moore is a negress in the town of Lubbock. In February, 1931, she purchased a house from W. R. Graves and executed a trust deed on a lot in the town of Lubbock to which said house was removed, to secure the payment of a note to Graves in the sum of $198.50, payable in monthly installments of $10 each. Payments were made on this note until about September, 1932. About December, 1931, this note was sold by Graves to appellant M. M. Coleman. Payments made by appellee on this note had been credited on the back thereof and the transfer of this note with the lien from Graves to Coleman recited:

"That all payments, offsets and credits to which said note is entitled do appear on the back of said note."

Coleman claiming that appellee was in default in her payments, sold this property under his trust deed and his coappellant, Clyde F. Elkins, moved the house situated thereon away from said lot and appropriated it to his own use. It was claimed that this was in payment of his attorneys' fees due by Coleman. Thereafter appellee, claiming that she had fully paid the said note of $198.50 prior to said sale, instituted suit for this property, asked for judgment against both appellants for the value of the house, and asked for exemplary damages, alleging, in part, that appellants had wrongfully and willfully converted said property to their own use and benefit and alleged specifically:

"Plaintiff says that the conversion of said property and specially said dwelling house was wrongfully, unlawfully, willfully and maliciously—and was done for the purpose of in-

juring and defrauding this plaintiff of the value of her property; and by reason thereof, the plaintiff is entitled to recover from defendants the further sum of $1,000.00 as exemplary damages."

The answer of appellants was a general demurrer and general denial and a special pleading setting out her indebtedness on said last-mentioned note at and prior to the time of the sale of the property by the trustee.

In answer to special issues the jury found that appellee had paid all money due on the note of $198.50 to W. R. Graves and M. M. Coleman; that the reasonable market value of the house alleged to have been converted was $125;. and that defendants acted wrongfully, unlawfully, willfully, and maliciously in moving said house from said lot and found as exemplary damages against the appellants the sum of $200.

Of the alleged errors committed by the trial court and discussed in appellants' brief, none were properly raised and preserved, unless it be those having to do with the issue of exemplary damages. These pass out of the case by the disposition we feel compelled to make of the judgment awarding the said sum of $200 against defendants as punitive damages. We agree with appellants' contention raised in their motion for new trial that the finding of the jury on this issue is without evidence to support it. If we correctly understand this record, the note in question bore certain indorsements of payment at the time of its purchase by appellant Coleman. These were called to appellee's attention about that time and their correctness apparently agreed to by her. She continued without objection to make payments on said note to Coleman until about the following September, when for the first time she raised the question that Coleman's predecessor in title had not properly credited her with a small payment, amounting to less than or about $10. A sharp dispute arose between them and appellee deposited in a bank the sum of $5.30 to Coleman's credit, which it was claimed by her constituted the balance owing him on the note. If this deposit was ever called to Coleman's attention until after the sale of appellee's property, we fail to find it in this record. Appellee had certain receipts and deposit slips claimed to show payment of the note in question and which we think sufficiently supported the jury's finding as to payment above mentioned, but there could not be implied from this that. Coleman thought or knew he had been paid prior to the sale in question, so as to support an action for exemplary damages. This because there

was ample ground for an honest difference of opinion between appellants and appellee, prior to the sale as to whether appellee had actually paid the note in full. All the circumstances tend to support Coleman's view, and he is completely corroborated by the evidence of Graves, his predecessor in title. All the controversy was over an alleged payment to Graves prior to the acquisition of the note by Coleman. Graves testified that the note correctly showed all credits, and explained the difference between the amount shown by the receipts held by appellee and such credits, by testimony showing that part of the receipts were duplicates. Coleman depended upon the correctness of the credits made by Graves and in relying upon these and Graves' statements, as we think is clearly inferable from the record, he could not be said to have acted willfully and maliciously. He himself knew nothing personally about the transaction, and we think the conclusion is not justified that his claimed acceptance of Graves' credits and version was wholly without any reasonable basis. We quote here from the authorities on this subject:

"'These damages are allowable only where there is misconduct and malice, or what is equivalent to it. A tort committed by mistake, in the assertion of a supposed right, or without any such recklessness or negligence as evinces malice or conscious disregard of the rights of others, will not warrant the giving of any damages for punishment, where the doctrine of such damages prevails.' 1 Sutherland on Dam., 724. 'That which is done contrary to one's conviction of duty, or with a wilful disregard of the rights of others, whether it be to compass some unlawful end, or some lawful end by unlawful means, or to do a wrong and unlawful act, knowing it to be such, constitutes legal malice.' Drake on Attach., § 733.

"These elements for the maintenance of an action for exemplary damage clearly constitute the belief and intentions of the wrongdoer a controlling ingredient; therefore, although there may not exist good cause for suing out an attachment, yet, if the evidence concerning all the circumstances attending it are consistent with and show that it was sued out under an honest belief of the truth of the grounds relied on, based on reasonable grounds, the inference of malice, which would otherwise arise, is repelled, and no recovery for exemplary damages could be had." Jacobs, Bernheim & Co. v. Crum, 62 Tex. 415.

See, also, Rankin v. Bell, 85 Tex. 28, 19 S. W. 874, 876, and 13 Tex. Jur., pp. 243 and 244.

"A power such as may be exercised by juries in awarding exemplary damages is liable to great abuse,—may often lead to great oppression; and there is no class of cases in which the conservatism of the judge should more frequently find field for action. In cases based on facts which merit condemnation, or even punishment, though not by law constituting crime, juries, under commendable impulses, but with judgment warped by passion, no doubt often render excessive verdicts; and, if it be conceded that such verdicts are to stand because the matter was within the discretion of the jury, then we have an absolutism—a despotism—nowhere else found in our form of government. The matter is in the discretion of the jury in the first instance, but it is the duty of the judge to see that this discretion is not abused." Tynberg v. Cohen, 76 Tex. 409, 13 S. W. 315, 317.

It is our duty as we see it to require a remittitur of the entire amount recovered in this case as exemplary damages within fifteen days from this date as a condition of affirmance, otherwise this cause will be reversed and remanded for a new trial, and it is accordingly so ordered.