## COLEMAN et al. v. MOORE.
### No. 4486.

Court of Civil Appeals of Texas. Amarillo.

Oct. 28, 1935.

See, also, 69 S.W.(2d) 552.

M. M. Coleman, Clyde F. Elkins, and Bean, Duggan & Bean, all of Lubbock, for appellants.

Lockhart & Brown, of Lubbock, for appellee.

JACKSON, Justice.

This is an action in trespass to try title, prosecuted by appellee, Estelle Moore, against appellants, M. M. Coleman and Clyde F. Elkins, to recover lot No. 17, block No. 219, of the original town of Lubbock.

In addition to the statutory action of trespass to try title, appellee alleged: That about February 19, 1931, she made her note to W. R. Graves for the principal sum of $198.50, payable in monthly installments of $10 each, the first installment due on March 1, 1931, and one on the 1st day of each month thereafter until the note was discharged, and that she executed a deed of trust creating a lien on said lot to secure the payment of the note. That some time thereafter the note and lien were acquired by M. M. Coleman, and he thereafter appointed Clyde F. Elkins as substitute trustee in the deed of trust, who, acting as such, advertised and sold the lot on October 4, 1932, and conveyed it to M. M. Coleman. That appellants unlawfully removed the house from said lot

and converted it to their own use and benefit. That, at the time of the sale of the lot and the removal of the house therefrom, the note had been paid and the lien satisfied, and such sale was void. That the rental value of the house was $2 per week. That the moving thereof would require repairs of the reasonable value of $25, and the expense of moving the house back to the lot would cost the reasonable sum of $25. These items she sought to recover as damages, or, in the alternative, she asked for the reasonable value of the house, which she claimed to be $250. That appellants, at the time of the sale of said lot and the removal of the house therefrom, knew that the note had been paid and the lien thereby extinguished. That such acts constituted a fraudulent scheme to defraud appellee out of the value of her lot and house, and such conduct was unlawful, willful, and malicious, and, in addition to her actual damages and the recovery of the title and possession to her property, she is entitled to exemplary damages in the sum of $1,000.

The appellants answered by general denial, plea of not guilty, and alleged that appellee was in default with her installment payments to Coleman, on account of which the deed of trust sale was made; that, before purchasing the note, Coleman was advised by W. R. Graves, the owner thereof, that appellee was in default in the sum of $15.75 on the installments, but the payment of said sum would bring the unpaid installments to date; that the amount in arrears was investigated by Coleman, W. R. Graves, the appellee, and her attorney, and it was ascertained and agreed that appellee was in arrears in the sum of $15.75 as claimed by Graves; that she, through her attorney, paid said sum, brought the installments to date, and the note and lien were purchased by Coleman; that, if appellee at that time had claimed the payment of any sum to W. R. Graves for which she had not been credited, Coleman would not have purchased the note and lien; that she continued for several months thereafter to pay the installments, and, by reason of her agreement, the payment of the $15.75, and the continued payment of the installments without objection, she is estopped to assert against appellants that she had paid any sum to W. R. Graves for which she had not received credit.

In response to special issues submitted by the court, the jury found, in substance, that appellee paid to W. R. Graves and M. M. Coleman all of the money due on the note; that the reasonable rental value of the house was $2 per week; that appellant Coleman at the time of the trustee's sale knew that the note had been paid in full; that, in causing the sale and the removal of the house, he was acting willfully and maliciously; and appellee was entitled to recover as exemplary damages the sum of $448.50 against M. M. Coleman.

On these findings, judgment was rendered for appellee against both appellants for the recovery of title to, and possession of, the lot and house, the sum of $240 for rent, $12 for cost of removing the house, and against M. M. Coleman for the sum of $448.50 as exemplary damages.

The appellant Coleman challenges as error the action of the court in submitting to the jury and the findings of the jury on the issues of whether he knew at the time of the sale that the note had been paid and whether he acted willfully and maliciously in such sale to defraud appellee out of her property because the evidence was insufficient to authorize the submission of such issues or to warrant findings of the jury thereon.

On a former appeal of this case, this court held, in an opinion reported in 69 S.W.(2d) 552, that the testimony was not sufficient to support a finding of the jury or a judgment based thereon for exemplary damages. The testimony revealed by the record on the former appeal, and the evidence disclosed by this record, are substantially the same. Without again reciting the testimony or the law on which we based our conclusions, we content ourselves by saying that we adhere to our former ruling unhesitatingly. We announced the same doctrine in Security State Bank of Tahoka v. Spinnler, 78 S. W.(2d) 275 (writ refused).

The appellants challenge as error the action of the court in refusing to give the issues they presented, submitting to the jury the question of estoppel alleged by them as a defense.

This defense was not submitted, although appellants requested several separate issues submitting estoppel which, if not technically correct, called the attention of the court to his failure to submit such issue. Graves v. Haynes (Tex. Com. App.) 231 S. W. 383; Wichita Coca Cola

Bottling Co. v. Levine (Tex. Civ. App.) 68 S.W.(2d) 310.

Appellee's suit is based on the contention that prior to the sale of the note and lien to Coleman she had paid to W. R. Graves $9.50 for which she had not received credit.

The testimony shows that, before the note was purchased, Coleman was advised by Graves that appellee was in arrears $15.75, and the payment of this amount would satisfy all that was due on the note to December 1, 1931, which would leave unpaid installments aggregating $98.50; that appellee was informed of the amount claimed to be due, consulted her attorney relative thereto, was advised to pay it, which she did through him, and made no claim that she had paid Graves any sum for which he had failed to give her credit. It is not claimed that appellee had paid Coleman any sum for which she had not received proper credit or that she had paid a sufficient sum to satisfy the balance of the $98.50.

The testimony tends very strongly to show she made the payment of this $15.75 for the purpose of bringing the payments to December 1, 1931, knowing that Coleman was purchasing the balance of the unpaid installments on the note.

"The various kinds of estoppel and the rules of estoppel in general apply to parties to commercial paper the same as in other transactions. So rights which one has under the rules of the law merchant or the Negotiable Instruments Law may be defeated by a rule of estoppel in pais. One cannot take advantage of his own neglect to the injury of a third person who has not himself been negligent in regard to the matter, but has acted in good faith and without notice. The principle of estoppel is not restricted to acts and representations made directly between the parties as there may be constructive representations or conduct equivalent to actual representations, which will work an estoppel as effectually as actual representations." Joyce, Defenses to Commercial Paper (2d Ed.) vol. 2, p. 1267, par. 921.

"Where a person liable on a bill, note, bond, letter of credit, certificate of deposit, stocks, or other security promises a prospective purchaser or assignee to pay the same, or represents to him that the obligation is valid and that there is no defense to it, he is estopped to resist payment in an action by such person, who has

taken the paper in reliance on his representation, and will be precluded from setting up a defense which would have been good as between the original parties. And it has been held that it is of no importance whether the assurance was given with a fraudulent intent or by mistake only." 21 C. J. p. 1143.

The application of the principle of estoppel to commercial paper, as announced by the text-writers above, is approved in Willis v. First Nat'l Bank of Littlefield (Tex. Civ. App.) 22 S.W.(2d) 471 (writ refused).

The court should have submitted the issue of estoppel.

■ The appellants assail as prejudicial certain acts and remarks of the court in the presence and hearing of the jury. While appellant Coleman was being interrogated by Mr. Lockhart as a witness, the record discloses the following occurrence:

"Q. You remember that I came to your office and brought these receipts and these deposits and sat down and figured them all with you and checked them with you against the credits on the note? A. You didn't do it.

"Q. You said I didn't? A. You didn't come to my office.

"Q. Max, don't you know you are a damned liar? A. You know you didn't.

"Q. You know that I did do it. A. I know you didn't.

"Q. I know I did. A. You never did do it.

"The Court (interrupting): Just a minute. The idea of two lawyers trying to conduct a case in a District Court in Lubbock County and sitting there like a couple of babies or children, shaking your fingers in each other's face. Now I want an apology from each of you and I want it now.

"Mr. Lockhart: I apologize to the court.

"Mr. Coleman: Yes, we apologize to you, Judge.

"The Court: All right."

At the time Coleman was acting in the capacity of a witness and not as an attorney. The only thing he did was to refuse to admit he was a "damned liar," and emphasized such refusal by shaking his finger in the face of Mr. Lockhart.

The jury might readily infer from the court's conduct that he believed the wit-

ness' denial was false, especially as the court failed to stop Mr. Lockhart, who precipitated the controversy, until after the witness, in response to interrogatories, had three times denied that he was lying.

It is clear that Mr. Lockhart was in error, because the testimony shows that the meeting referred to did not occur at Mr. Coleman's office and the exhibition of the receipts and deposits did not occur as indicated in the questions of Mr. Lockhart. He himself, while on the stand later, testified that the meeting referred to was at the office of Mr. Elkins; that he went to such office, called Mr. Coleman, exhibited the receipts and deposit slips to Mr. Elkins, and showed him that they figured a total of $198.50; that he showed Mr. Coleman the deposit slip for $5.30 which Coleman had theretofore refused to accept.

Appellants also complain of the use by Mr. Lockhart, in his closing argument to the jury of the following language: "Then talk about this woman having to go into court. Oh, she didn't have to go into court. No. She did by choice, that is true. She didn't let them have the property. She could have let them steal her property as they did and say nothing about it."

There is absolutely no testimony in the record justifying the use of this language by the attorney.

That the remarks and acts of the court and the statement of counsel in his closing argument were prejudicial is manifest from the fact that the jury found that Coleman knew the note was paid at the time of the sale of the property and acted willfully and maliciously for the purpose of defrauding the appellee, since there was no evidence before the jury to support such findings.

There are numerous other errors assigned which we deem it unnecessary to discuss, but we believe it proper to say that, under the record, in determining the amount unpaid, the interest on the installments which were not paid to Mr. Coleman on their due date should be taken into consideration, and that much of the testimony of appellee was hearsay, opinions, and conclusions of the witness which, on proper objection, should be excluded.

The judgment is reversed, and the cause remanded.