THOMAS B. STEPHENSON v. JESSE F. PRICE.

Where cotton was delivered in 1861 to a party as bailee, to be re-delivered on demand, and no demand was made until 1865, it was no defense that the bailee had sold the cotton and invested the proceeds in negroes.

In case of conversion of personal property by a bailee, the true measure of damages is the highest price of the article between the time of the demand and the day of trial.

Where a party pleaded an arbitration and award, but the proof was that there was no written statutory submission, but only a verbal submission and verbal décision by the arbitrators how to settle, without any finding of any specific facts, such an award cannot be regarded. (Paschal's Dig., Art. 60, Note 244.)

Where the bailee was security for the bailor, and it is agreed that he may sell and pay the debt at a given price, and he sells, but does not pay until after demand, he cannot claim that he paid in cotton at that price, but is only entitled to be credited for the original debt.

APPEAL from Austin. The case was tried before Hon. BENJAMIN SHROPSHIRE, one of the district judges.

The record is voluminous, but the material facts are stated by the judge who delivered the opinion. The fact in regard to the payment to House is, that Stephenson, the defendant, had made himself liable to pay the debt of the plaintiff to House in 1861; but he did not pay it until the 10th of November, 1865, which was after the decision of

the arbitrators that he should pay it. It seems to the *Reporter* that it was proved that Stephenson had the right to sell cotton enough at eight cents a pound to pay this debt; but although he had sold (at what price is not stated) in 1864, he had not paid the debt when the cotton was demanded. He claimed, and the arbitrators decided, that out of the proceeds of the cotton sold he might pay the House debt, at eight cents a pound, regardless of the price he got, and the arbitrators decided that he should return the balance of the cotton in kind. The defendant said he was satisfied with the award; the plaintiff immediately said that he would not abide by it. Nevertheless, Stephenson proceeded to pay House the original account of $258 10, and $100 18 interest, making $358 28; and now he claimed, under the original understanding, and as concluded by the arbitration, that he should be credited with so many pounds of cotton as would produce this sum at eight cents per pound. The jury found a special verdict for $900, coin, deducting $268 44, balance $631 56. So that the real precedent is, that the bailor was only entitled to be credited for the original debt, and not the interest actually paid.

*Giddings & Giddings*, for appellant, insisted that the arbitration was a good common-law submission and award and was conclusive.

*Hunt & Holland*, for appellee, argued the case upon the facts.

LINDSAY, J.—This action was founded upon a bailment of seven bales and a fraction of cotton by the appellee to the appellant, to be re-delivered when called for. The bailment was made at the close of the year 1861, and demand was made by the bailor in the fall of 1865. The bailee, failing to restore the property on demand, the appellee brought suit against the appellant, and recovered a verdict and judgment, from which this appeal was taken.

On the trial, it appeared that in the year 1861 the appellee cultivated a tract of land, as a renter, and during that year the appellant bought the land and took possession thereof, after the tenant had gathered and penned his cotton, and had entered into an agreement with the purchaser to gin and bale the cotton, retaining out of it the toll for ginning and baling, and taking care of the cotton, as a deposit, till the owner called for it. Upon demand made in 1865, the appellant admitted he had sold the cotton and appropriated the proceeds to the purchase of negroes.

From this state of facts, we think it is clear that such a use of the property by the *bailee was a conversion in law, and he thereby became liable to the bailor for the highest market value of the property from the time of the demand made, up to the time of the trial of the cause.

But the appellant sets up in defense, that he was the security or guarantor of the appellee, to one T. W. House, for the payment of a bill of merchandise purchased by the appellee, and at the time of the deposit of the cotton it was agreed that the appellant should apply enough of the cotton, at eight cents per pound, to pay off and discharge said indebtedness for the merchandise. In addition to this, the defendant alleged that the parties had submitted the matter in controversy between them to arbitration, and an award was made, allowing him to retain so much of the cotton, at eight cents per pound, as would settle the bill; and if there was a balance of the cotton, it should be delivered to the appellee in kind. This award was made only a few days, or weeks, before the institution of this suit, which was commenced on the 14th day of November, 1865. The account of T. W. House was $258 92.

The court charged the jury, in substance, that if they believe from the evidence the deposit of the cotton was made by the plaintiff with the defendant to be kept by him till demanded, and that the defendant sold and appropriated it to his own use, they should find for the plaintiff

the highest market value of the cotton from the date of the demand to the time of trial; and after finding the amount of cotton deposited and the market value, as directed, they should credit the amount so found by the amount paid by defendant to T. W. House. The jury found the value of the cotton to be $900, from which they say in their verdict "they deduct $268 44, leaving $631 56 due plaintiff." The court overruled and set aside the defendant's plea in bar upon the alleged award, and judgment was rendered upon the verdict of the jury, from which defendant appealed.

The first assignment of error is, that the court ought not to have overruled the plea in bar based upon the award. The proof shows that there was a verbal agreement between the parties to submit the matter in controversy between them to arbitration, and that they chose three of their neighbors for that purpose, who, after hearing the statements of each, announced to the parties their opinions of their respective rights; that is, "that the defendant should retain sufficient of the cotton or proceeds, at eight cents per pound, to pay the debt to T. W. House, and deliver the balance to plaintiff in cotton of equal value." Such was the nature of the submission and the character of the award. It was not a statutory submission. But it is claimed to be a common-law submission, which might still be binding upon the parties as a contract. It is a submission by word and not by deed, and leaves everything to the vague and uncertain recollections of human memory. This is too frail a security for the rights of parties. The award itself is vague, ambiguous, and indeterminate. It settles nothing; it determines nothing. No fact is found; no law is adjudicated upon. And for this very vagueness, the court ought not to have regarded it in adjusting the rights of the parties in this controversy. Besides, one of the arbitrators, introduced as a witness, stated that he was impressed with the belief, when their award was made, that a sufficient amount of the cotton, at

eight cents per pound, to pay the demand of T. W. House, was actually the property of House; while the witness, House himself, says that he had no interest in or claim upon the cotton. The court was, therefore, right in adjudging that this plea was no bar to the action.

We can see no error in excluding that portion of House's testimony relied upon by the defendant, which speaks of the payment of the interest at the usual and customary rates charged by the merchants of Houston. No custom, whatever it may be, in contravention of the statutory rate of interest, ought to be received as evidence in the courts. It was properly excluded.

From the view we have already taken of the nature of this bailment, and the responsibilities of the parties to it, we consider that the law was correctly expounded by the court in the charge to the jury. If we are right in this conclusion, then the instructions asked by the defendant, in antagonism to the charge given by the court, and which embraced the whole law of the case, were rightfully refused. If there is any error, it is rather against the plaintiff than in his favor. We are therefore not inclined to disturb the verdict of the jury, and the judgment of the court is

AFFIRMED.