**SECURITY STATE BANK OF TAHOKA**
**et al. v. SPINNLER.**
**No. 4327.**

Court of Civil Appeals of Texas. Amarillo.
Jan. 7, 1935.

Rehearing Denied Jan. 28, 1935.

Lockhart & Brown, of Lubbock, for appellants.

Alfred M. Scott, of Austin, and G. H. Nelson, of Tahoka, for appellee.

MARTIN, Justice.

A former appeal of this case is reported in 55 S.W.(2d) 128, where its important facts are recited. These will be supplemented, when thought necessary.

The alleged conversion of twenty-four bales of cotton on January 6, 1932, by appellants, which appellee alleges he either owned, or had a landlord's lien upon, furnished the basis for the present suit. After the alleged conversion, suit was promptly filed and tried. The judgment then rendered was reversed.

See case supra. The case was again tried. A mistrial resulted. The third trial eventuated in the judgment from which the present appeal is prosecuted. It was rendered February 19, 1934. The judgment in the first trial was for $183.95 actual and $250 exemplary; the last for $1,251.51 actual and $700 exemplary damages. The value of the cotton was alleged to be $628.98 on the date of its conversion, and its peak price since that date 11¼ cents per pound. Its value at the peak price up to the date of the last trial was the sum found by the jury as actual damages, viz., $1,251.51. This was in response to a special issue submitted by the court, inquiring as to its peak price between the date of the alleged conversion and the date of the trial. The evidence uncontradictedly supports the two values alleged; that is, the value on the date of the alleged conversion at $628.98 and its highest value since to the date of the trial, at $1,251.51. The jury also found that the appellants acted willfully and maliciously in converting the said twenty-four bales of cotton.

■ Under proper assignments, appellants vigorously contend that the facts of this record call for a different measure of damages from that submitted; that it is error to enter judgment for the highest possible value of this cotton to the date of the last trial, when it cannot be controverted that the long delay in trying the case was due to no fault of appellants, but to matters beyond their control.

On the issue of a willful conversion by the officers of appellant bank, the verdicts on the first and last trial are precisely opposite. As to a portion of this cotton, we agree with the conclusion of the first jury, as we shall presently discuss, and hold that no evidence existed which justified a finding of a willful conversion of the entire lot of cotton. The question raised, however, will now be disposed of upon the assumed hypothesis that the conversion alleged was a willful one, as to all the twenty-four bales.

What is the true measure of damages in suits for conversion of chattels of a fluctuating value has been, and is yet, the prolific source of much contrariety of judicial expression. So much so that many states have statutory enactments to clarify the subject—notably Oklahoma, California, the Dakotas, Montana, and Georgia. The subject has remained in a state of some confusion in Texas for many decades. See cases cited in 40 A. L. R. at page 1287. The apparent conflict between many of the well-reasoned opinions may perhaps be harmonized by making note of the presence therein or absence therefrom of the following important factors: (1) The volatile and erratic character of the market for the chattel under consideration; (2) the diligence in filing and prosecuting suit; (3) the perishable character of the chattel; (4) the precise issue made by the pleadings; (5) the intention and possibility of the owner holding same for any particular length of time; (6) whether or not ownership is still in the wrongdoer at the time of the trial.

There are many cases in Texas where the subject was incidentally considered or casually mentioned. Four Texas cases are apparently relied on by appellee. We have found none other where the question appears to have been seriously considered. We now notice these.

Stephenson v. Price, 30 Tex. 715, was a case of conversion of cotton by a bailee. The measure of damages therein approved was "the highest market value of the cotton from the date of the demand to the time of trial." The time of filing suit and trial does not appear. Moreover, this decision has for its background old oxcart days when months went by without change. It was before the establishment of a cotton market in which is immediately reflected the reaction to every important political or climatic event which may be thought to affect either the growth or consumption of this product.

Witliff v. Spreen, 51 Tex. Civ. App. 544, 112 S. W. 98, 100, is a case of conversion of chattels obtained by fraud. The rule there given is: "In a suit to recover for the conversion of property obtained by fraud, the measure of damages is the value of the property at the time it was wrongfully obtained, or its value at any time thereafter prior to the trial of the cause, and in such case it is error to charge the jury that the plaintiff is entitled to recover the value of the property as fixed by the fraudulent contract under which it was obtained."

The suit was filed April 30, 1907, and tried June 14, 1907. The character of the personal property converted is not even vaguely mentioned. Obviously, if its value did not fluctuate, the measure of damages stated could not harm the defendant. No writ was applied for. This authority does not seem to control the disposition of the present question.

In Burmarsal Co., Inc., v. Lake (Tex. Civ. App.) 272 S. W. 582, 584, the property allegedly converted was oil-well casing. The highest intermediate value to the date of the

trial was the measure of damages given therein, where the conversion was "willful, fraudulent, or under circumstances imputing negligence to the trespasser." The case was reversed and rendered because the evidence showed an innocent conversion. The court was therefore not called upon to pass directly upon the question under present consideration.

The only case it cited upon the present law issue is that of Early-Foster Co. v. Mid-Tex Oil Mills (Tex. Civ. App.) 208 S. W. 224, 226. The Burmarsal Case was given a W. O. J. by the Supreme Court, while a writ was refused in the Early-Foster Case. The Early-Foster Case does not, in our opinion, justify the broad statement that the proper measure is the "highest intermediate value to the *date of the trial.*" (Italics ours.)

We quote from it:

"Where the conversion is not attended with fraud, willful wrong, or gross negligence, the measure of damages is the value of the property converted at the time of such conversion, with legal interest thereon to the time of the trial. But where the conversion takes place under either of these circumstances, and the property converted is of changing value, the measure of damages is the highest market value of such property between the date of conversion and the *filing of the suit.* Bayle v. Norris [Tex. Civ. App.] 134 S. W. 773; Witliff v. Spreen. 51 Tex. Civ. App. 544, 112 S. W. 98; Ripy v. Less, 55 Tex. Civ. App. 492, 118 S. W. 1084; Ry. Co. v. Starr, 22 Tex. Civ. App. 353, 55 S. W. 395. * * *

"In such case, the wrongdoer will not be entitled to the advantage of the fluctuation in value, but will be held to the highest value between the time of his wrongful taking and the *filing of the suit,* for the reason that he has deprived the owner of the opportunity of obtaining such price." (Italics ours.)

On motion for rehearing it is stated that appellee did not ask for the highest price to the time of the trial, but this statement is immediately followed by this significant language: "Where the property is of fluctuating value, and has been taken without any claim of right, and *the suit is seasonably brought,* we think that the standard which is announced herein is a just measure of damages." (Italics ours.)

As illustrating the general attitude of the courts towards allowing the highest intermediate value to the time of a long-delayed trial, we quote: "The rule of highest intermediate value up to the time of trial former-

ly prevailed in that state, and may be found laid down in Romaine v. Van Allen, 26 N. Y. 309, and Markham v. Jaudon, 41 N. Y. 235, and other cases, although the rigid application of the rule was deprecated by the New York superior court in an able opinion by Judge Duer, in Suydam v. Jenkins, 3 Sandf. [5 N. Y. Super. Ct.] 614. The hardship which arose from estimating the damages by the highest price up to the time of trial, which might be years after the transaction occurred, was often so great that the court of appeals of New York was constrained to introduce a material modification in the form of the rule, and to hold the true and just measure of damages in these cases to be the highest intermediate value of the stock between the time of its conversion and a reasonable time after the owner has received notice of it to enable him to replace the stock. This modification of the rule was very ably enforced in an opinion of the court of appeals delivered by Judge Rapallo, in the case of Baker v. Drake, 53 N. Y. 211 [13 Am. Rep. 507], which was subsequently followed in the same case in 66 N. Y. 518 [23 Am. Rep. 80]; and in Gruman v. Smith, 81 N. Y. 25; Colt v. Owens, 90 N. Y. 368; and Wright v. Bank of Metropolis, 110 N. Y. 237, 18 N. E. 79 [1 L. R. A. 289, 6 Am. St. Rep. 356, 13 Cent. Rep. 415]. It would be a herculean task to review all the various and conflicting opinions that have been delivered on this subject. On the whole, it seems to us that the New York rule, as finally settled by the court of appeals, has the most reasons in its favor, and we adopt it as a correct view of the law." Gallagher v. Jones, 129 U. S. 193, 9 S. Ct. 335, 337, 32 L. Ed. 661. "The Supreme Court of the United States holds that where timber is cut and removed from government land the damages are to be assessed as against a wilful trespasser at the full value of the property at the time and place of demand or *of suit brought,* with no deduction for his labor or expense." Sutherland on Damages, 4216, § 1110. (Italics ours.)

See E. E. Bolles Wooden-Ware Co. v. U. S., 106 U. S. 432, 1 S. Ct. 398, 27 L. Ed. 230.

"And in others the courts allow the highest market value between the time of the conversion and the *commencement of suit or the trial;* though some of the latter annex the limitation that the suit be commenced within a reasonable time and prosecuted to trial with due diligence." Sutherland on Damages, 4239, § 1118. (Italics ours.)

"When extraordinary circumstances have occurred to produce extreme prices in the

article during a long period of time, *and the suit has been protracted without any fault of the defendant*, or when the article contracted for is of a perishable nature, or such as is to be readily parted with if delivered, or when there are other circumstances attending the transaction, not in the ordinary course of trade, calculated to render such a measure of damages inequitable and unjust, the rule of the highest price in the intervening time would not be applicable." Heilbroner v. Douglass, 45 Tex. 402, 407. (Italics ours.)

"In Oklahoma the plaintiff may elect, when the cause is submitted or prior thereto, to take the value at the time of the conversion, with interest, or if the action has been prosecuted *with reasonable diligence*, the highest value up to the time of the rendition of the verdict, without interest." Sutherland on Damages, 4218, § 1111. (Italics ours.)

The rule of highest value between the date of conversion and filing a suit seasonably brought, announced by Justice Jenkins in the Early-Foster Case, supra, is not essentially different from that adopted by the Supreme Court of the United States. Apparently the four Texas cases discussed were correctly decided upon the record made in each, but neither appears to have the peculiar facts found here. This case was seasonably brought and tried once, but a two-year delay ensued to the third and last trial, due to no fault of appellants. The price of cotton doubled in the meantime. The measure of damages in stock conversion cases, as stated by the United States Supreme Court, is given above. This because of its volatile and erratic value. The value of cotton in modern times fluctuates even more violently than stocks. Compensation for the injury is the result to be obtained, and is the determining factor always in formulating any measure of damages. While the wrongdoer is not to be allowed to profit from his own wrong, the rule works both ways. What if the plaintiff willfully or negligently fails to file or to prosecute his suit?

In our opinion, no aboslutely rigid rule may be laid down applicable alike to every state of facts in conversion cases. To illustrate: Three carloads of products are willfully converted at one time, belonging to different owners. One is a car of tomatoes destined for an immediate market; one of eggs destined for cold storage and intended to be sold the following winter; the other a car of stone to be delivered to a building project in sixty days. Three conversion suits are filed one year after the wrongful conversion. Is the measure of damages the highest intermediate value to the date of the trial in all these cases? Can the tomato man select a day when tomatoes were almost unobtainable to fix the value of a perishable product that could not be held until such day? Will the court permit the egg man to recover on the basis of a market that it conclusively appears his product was not intended for? This would, if permitted, be but another method of allowing the recovery of vindictive damages. Sutherland on Damages, p. 4248, § 1120. If, in addition, as in this case, exemplary damages 'eo nomine were recovered, we would have a case of recovery of double damages.

There must, of course, be an element of certainty about rules of law, otherwise the business world cannot proceed with any sense of security. But a complex and constantly changing social order call for the application by analogy of old principles to new conditions. Giving heed to this, and to the controlling legal principles of compensation only for injury, we hold in this case that the proper measure of damages under the particular record before us was the highest intermediate value of the cotton between the date of its alleged conversion and the filing of the plaintiff's suit, or the first trial; it appearing the case was seasonably filed and almost immediately tried. Facts may exist which make a different measure applicable, but these were neither pleaded nor proven.

Twenty-four bales belonging to three tenants of appellee were allegedly converted by appellant bank. It held a chattel mortgage on all these, and its debt was due. Appellee claimed a landlord's lien for advancements on a three-fourths interest in these and on one-fourth for rent. Nineteen of these were in the cotton yard at Tahoka on the day of their alleged conversion, and had been off the tenants' places for more than thirty days. The other five remained on the farm where raised. Appellee claims ownership of all twenty-four by virtue of a contract expressed by one of the tenants as follows:

"Mr. Spinnler said to just hold the cotton and he would give us credit on our notes what it was worth at that time, and we would hold it until it went up and he would give us the benefit of any rise when it was sold.

"Q. Did that conversation relate to the tenant's interest in the 1931 cotton? A. Yes, sir.

"Q. And that three-fourths was to be credited on the notes which you then owed Mr.

Spinnler for that year for the landlord's advancements? A. Yes, sir. * * *

"Q. Did he say about where to hold the cotton; what to do with the tickets? A. He said to leave it in the yard or bring it out home, either one.

"Q. You left yours in the yard? A. Yes, sir.

"Q. Did you hold the yard tickets for Mr. Spinnler? A. Yes, sir.

"Q. And finally see that they got to him all right? A. I turned them over to Mr. Hargett when I left."

The entire testimony, including that of appellee, seems to show a pledgee's lien rather than ownership. McMullen v. Green (Tex. Civ. App.) 149 S. W. 765; 33 Tex. Jur. pp. 682, 683.

Appellee's recovery, therefore, must be limited to his actual interest in the property. This was the amount of his debt. 65 C. J. p. 132. The court assumed appellee was the owner of the cotton, and gave judgment for its full value, which exceeded the amount of his debt. This was error.

■ The so-called agreement of ownership above mentioned was allegedly communicated to appellant bank prior to the conversion pleaded. The bank had a right unquestionably under its chattel mortgage to take a three-fourths interest in the nineteen bales, unless the appellee's lien for advancements was superior to its own. More than thirty days had elapsed since their removal from the rented premises. This time, under article 5223, R. S., prima facie terminated the alleged landlord's lien. We judicially know that a grave banking crisis existed. The bank had the choice of hazarding its interest by believing that a superior lien still existed, though the statutory period for it had expired, or proceeding under its contract to protect its depositors. It chose the latter course. The alleged contract between the tenant and landlord was not entirely free from suspicion, even if it be conceded that it kept a superior lien in existence after the removal of the cotton. Manifestly a jury was not bound to believe it. Why, then, should the bank at its peril be compelled to do so? There was, we think, sufficient basis for the proceeding it took to relieve it from any charge of willfulness or malice, as to this three-fourths interest. The danger of intrusting a jury with the weapon of assessing damages as punishment' has been pointed out in a bristling opinion by the Supreme Court in the case of Tynberg v. Cohen, 76 Tex. 409, 13 S.

W. 315. See, also, Coleman v. Moore (Tex. Civ. App.) 69 S.W.(2d) 552.

■ We think in any case where there is sufficient ground for an honest difference of opinion upon a given state of facts, especially where it concerns a hazy legal right, the sincere pursuance of a mistaken right by one of the parties cannot thereafter be made the basis of a claim for vindictive damages.

■ The bank, however, must have known its right to the remaining one-fourth interest and to all the five bales was very questionable, if not absent. At least a jury question existed so as to authorize the submission of the issue of a willful conversion of all cotton except the three-fourths interest in nineteen bales. It pleaded and proved a waiver of the entire landlord's lien, but this was rejected by the jury on the last trial, though not in its entirely by the jury on the first trial. If innocently converted, the measure of damages is, we think, correctly stated in the Early-Foster Case, supra.

The court in our opinion erred in submitting the issue of a willful conversion of the entire lot of twenty-four bales.

■ The trial court submitted in issue No. 1 the existence of a contract between the parties waiving the landlord's lien in consideration of an extension to the tenants of a past indebtedness and further advancements to them, but assumed the existence of advancements and the amount thereof, as well also as the existence of a contract which kept appellee's lien alive after the cotton had been off the rented premises more than thirty days. In our opinion, the latter should have been submitted as issues, because the testimony comes from interested witnesses, under the rule announced in the following quotations:

"Upon the authority of the recent cases of I.-G. N. Ry. Co. v. Casey (Tex. Com. App.) 46 S.W.(2d) 669, Federal Surety Co. v. Smith (Tex. Com. App.) 41 S.W.(2d) 210, and Dallas Hotel Co. v. Davison (Tex. Com. App.) 23 S. W.(2d) 708, we are of the opinion that it was necessary under the pleadings and the evidence for an issue on the value of the property to have been submitted to the jury and a finding made thereon favorable to the plaintiffs before a valid judgment could be rendered against the insurance company. The above authorities are by the Commission of Appeals, and each has the express approval of the Supreme Court. Several late cases by the Courts of Civil Appeals have followed them.

"On the point that an issue arising out of the testimony of an interested witness should be submitted to the jury, we cite American Surety Co. v. Whitehead (Tex. Com. App.) 45 S.W.(2d) 958; Mills v. Mills (Tex. Com. App.) 228 S. W. 919; Pope v. Beauchamp, 110 Tex. 271, 219 S. W. 447; Walker v. Dawley (Tex. Civ. App.) 4 S.W.(2d) 159; Thomas v. Saunders (Tex. Civ. App.) 150 S. W. 768; A., T. & S. F. Ry. Co. v. Lucas (Tex. Civ. App.) 148 S. W. 1149; 17 Tex. Jur., § 418, p. 926.

"In Houston, E. & W. T. Railway Co. v. Runnels, 92 Tex. 305, 47 S. W. 971, 972, it is said: 'It is the province of the jury to pass upon the credibility of the witnesses, and they may disregard the testimony of a witness who has neither been impeached nor contradicted, if they believe his statements to be untrue from his manner of testifying, prejudice exhibited towards the opposite party, or his interest in the result of the litigation, or other things indicating that the evidence is not reliable.'

"The testimony here under consideration has not the positive and unequivocal character of the testimony considered by this court in Golden v. First State Bank of Bomarton (Tex. Civ. App.) 38 S.W.(2d) 628, Boyd v. Guinn (Tex. Civ. App.) 44 S.W.(2d) 1112, Edelbrock v. Farmer (Tex. Civ. App.) 43 S.W. (2d) 456." Chicago Fire & Marine Ins. Co. v. Harkness, 58 S.W.(2d) 171, 172, 173.

We sustain appellant's assignments raising this question. This ruling applies as well to any other disputed issue, evidence of which comes from the same source as the above.

In view of another trial and to conserve space, we do not here reproduce the lengthy statement of testimony necessary to demonstrate our conclusion.

Appellants contend under various assignments that appellee's attorneys improperly argued for, and the jury illegally allowed in response thereto, compensatory damages under the guise of exemplary damages.

He pleaded:

"In determining whether, and how much, exemplary damages shall be allowed, plaintiff asks that the jury be allowed to consider the following items of loss and damage and injury and harassment which have directly and proximately resulted to plaintiff as a result of said conversions:

"a. Plaintiff has incurred reasonable and necessary attorney's fees already of $350.00 to an attorney for prosecuting this case, in trial court.

"b. Plaintiff has been compelled to make eight trips from his home to Tahoka, a distance of over 400 miles each way, for the purpose of prosecuting this case, and in so doing has reasonably and necessarily expended over $350.00 in expenses of travel, accommodation and in transporting necessary witnesses to the trial, and other necessary incidental expenses, and has lost much time from his other business and affairs."

He testified, in substance and effect, that the three trials had cost him, aside from attorneys' fees, $350, that he had brought three witnesses from the Rio Grande Valley to the last trial at an expense of $125, and that his other expenses were such as to make the $350 pleaded or a total, court expenses and attorneys' fees, of $700.

His attorney argued to the jury, in part, as follows: "If you believe he did not waive his lien in this case, then you believe he has the cotton coming to him, and if you believe that, then how do you get around the fairness of paying him what he has been out in protecting his right in this court room? He has taken his money that he has worked for and hired somebody to come in here and plead his case for him. Is that the right or wrong way to do? If you say in this first issue that he did not waive his lien, then he had his cotton coming to him and in all fairness would you not say 'If I was right to start with and am still right I ought to be compensated for my expenses I have been out in prosecuting this case, whether $10.00 or $1,000.00.'"

On motion for new trial alleging jury misconduct, the only juror called testified, in part, as follows:

"Q. You heard the testimony of Mr. G. E. Spinnler while he was on the witness stand to the effect that there had been three trials of this case and that his attorney's fees for these three trials were three hundred and fifty dollars? A. Yes, sir.

"Q. You also heard his testimony that he had made eight trips from El Paso to Tahoka for the purpose of trying this case and that his expenses on those trips had amounted to two hundred and twenty-five dollars? A. Yes, sir.

"Q. You also heard his testimony to the effect that he had expenses in bringing two witnesses from the Rio Grande Valley for the first trial of one hundred and twenty-five dollars? A. Yes, sir.

"Q. The total of those amounts of $350.00 and $225.00 and $125.00 make up $700.00, does it not? A. I believe it does. * * *

"Q. Anyway, you gentlemen discussed among yourselves that Mr. Spinnler ought to be entitled to recover this expense he had been out for attorney's fees in the trial of the case? A. We first voted to see whether or not he was entitled to any expenses.

."Q. And you determined he was entitled to recover that? A. Yes, sir.

"Q. Special Issue No. 3 was about what amount of exemplary damages you would assess against the defendant Security State Bank, and you men answered that question as $700.00? A. Yes, sir.

"Q. In arriving at that amount of $700.00 which you determined to assess, you arrived at that amount by adding up the expenses that Mr. Spinnler testified he had been out in trials of the case? A. Yes, sir.

"Q. And returned your verdict for that amount in order to repay him for the expenses? A. We figured the actual expenses was $700.00.

"Q. And that is how you arrived at the exemplary damages you assessed? A. Yes, sir."

The argument complained of as set out above amounted in effect to a request to the jury for that which this court held on the former appeal a litigant was not entitled to recover, viz., attorneys' fees and expenses as actual damages. See 55 S.W.(2d) 128, and authorities there cited. That the jury heeded this request and found the exact amount of such items as actual damages under the name of exemplary damages is plainly shown. We need not pass on the assignment alleging jury misconduct as it will probably not again occur, but we have no hesitancy in holding the above argument improper. The state of the law on this subject is such that it is difficult for any trial judge to hold the matter within proper bounds, but this is a hazard any litigant takes who pleads and proves such items as part of his case on exemplary damages.

We are further of the opinion that evidence of $125 as an item of expense for bringing witnesses from the Rio Grande Valley to the last trial was inadmissible. Likewise any other expense incurred after the first trial; it appearing the necessity of two subsequent trials was due to no fault of the appellants. If attorneys' fees and hotel bills in subsequent trials are proper items to be taken into consideration on the issue of exemplary damages, why not the stenographer's fee on the former and this appeal, and all costs of two appeals, if the case is tried again? The authorities were collated on a former appeal. They go far enough, but evidently did not contemplate the allegation and proof of every kind of expense, even those pertaining to matters beyond the control of appellants and for the existence of which appellee was in a measure directly responsible.

Much of the difficulty experienced by the bench and bar in determining the measure of damages in cases of this character will disappear if the six important and controlling factors noted above are kept in mind. In attempting to clarify the nebulous subject of the proper measure of damages in conversion cases, we have tried to respect precedents, without at the same time permitting a cold legal formula to override what seems to us to be a rule of justice and common sense. The measure of damages found in this record can be supported by quotations from hoary authorities, but, if the changing commercial life of a progressive people is to be interpreted under the candle of the living rather than the dead, we have, it seems to us, announced a rule that comports with justice, if not with an ancient formalism.

Reversed and remanded.