**WOOL GROWERS CENTRAL STORAGE CO. v. COCHRAN.**

**No. 9037.**

Court of Civil Appeals of Texas. Austin.

July 9, 1941.

Rehearing Denied July 23, 1941.

Collins, Jackson & Snodgrass, of San Angelo, for appellant.

Hughes, Hardeman & Wilson, of San Angelo, for appellee.

BAUGH, Justice.

Appellee sued appellant for damages for alleged conversion, by sale, without his permission or authority, of approximately 2,900 pounds of wool stored by Cochran with appellant storage company in San Angelo, Texas, in August, 1939. The wool in question was sold, along with numerous others lots stored with appellant by various owners, on September 1, 1939. Appellee sought damages not only for the then value of the wool, but also for the difference between the then price and the highest market price at any time between September 1st and the time suit was filed, on the ground that the sale was wilfully made.

The case was submitted to a jury on special issues, in answer to which they found that the appellant sold appellee's wool "without plaintiff's authority"; and, second, that said sale "was wilfully made." On the latter issue the court instructed the jury that "for an act to be wilful, it must be done in bad faith or with an evil *intent on the part of the doer of the act.*" The issue as to what was the highest market price for such wool between the time sold and the time suit was filed was not submitted to the jury, nor requested to be submitted, but the court manifestly found such price to be that testified to by appellee himself; and rendered judgment based upon appellee's testimony.

The undisputed evidence shows that the appellant is a bonded warehouse and maintains a sales agency on commission for all wool stored with it. For reasons satisfactory to himself, the appellee moved

his wool from another warehouse in San Angelo to that of the appellant. Sometime thereafter appellant procured for him, at his request, a federally guaranteed bank loan on this wool, apparently without any charge therefor. The appellant pleaded as a defense, that appellee authorized it to sell his wool if and when it reached a price of 22½¢ a pound. Appellant's secretary-treasurer, its sales manager, and an employe all testified positively that when the wool was stored with appellant, appellee authorized a sale thereof at 22½¢ a pound. As soon as the market reached this price, on September 1, 1939, the appellant sold this wool, along with numerous other small lots of wool stored with it by various owners, amounting in the aggregate to 150,000 or 160,000 pounds. With the proceeds it paid off the bank loan, deducted sales charges, and a 2½% commission to itself, mailed the cancelled note to appellee, together with sales account statement and its check for the balance of the purchase price received. This check appellee declined to accept.

While appellee testified positively that the testimony of the other witnesses was untrue, and that he did not authorize the sale by appellant of his wool, but merely requested that they procure for him a loan on the wool, he did admit that when he stored the wool with appellant he not only told the secretary-treasurer that he wanted to procure a loan, but also that he talked with the sales manager about the sale of the wool.

It is not controverted, however, that the appellant handled some four million pounds of wool per year; that it acted as broker primarily for all wool stored with it; that it made no charges against appellee for any storage or services in connection with procuring his loan; that it promptly informed him of all transactions and accounted to him for all sums received; and that this small lot of wool was handled in the same manner, and as a part of a carload sold at the time made up of numerous small lots of wool left with it by other customers, most of whom had also procured loans on their wool.

The most that can be said of appellee's testimony is that he did not give appellant any authority to sell his wool without his consent. We have read carefully the entire statement of facts, and it is, we think, wholly devoid of any testimony or circumstances which would justify the jury in finding that the sale was made fraudulently or in bad faith; and that if there was in fact a conversion of the wool by the appellant it was an innocent conversion made under the belief, or upon the reasonable assumption, by appellant, that it was authorized to make the sale of this wool at the time and under the circumstances it did make it.

In order to authorize punitive damages, in case of conversion, that is the recovery of the difference between the value of the property converted at the time of the conversion, and the highest price it would have brought between that time and the date suit is filed, it is necessary that the tort must be "wilful, fraudulent, or committed in circumstances imputing negligence to the wrongdoer, thus showing that he was indifferent to the rights of others * * *." Early-Foster Co. v. Mid-Tex. Oil Mills, Tex.Civ.App., 208 S.W. 224, error refused; Security State Bank v. Spinnler, Tex.Civ.App., 78 S.W.2d 275, error refused; 42 Tex.Jur., §§ 58 and 60, pps. 572 and 575, et seq. The record wholly fails to show that the appellant was, in the instant case, guilty of such conduct; and the finding of the jury that the sale by it of appellee's wool was "wilful", as that term was defined in the court's charge, is wholly without evidence to support it and cannot stand.

We are of the opinion also that the appellee failed to establish the measure of his damages, even if it be conceded that the sale was "wilfully" made. No market reports were introduced in evidence, and the only evidence on which the judgment could have been based was that of appellee himself, based upon his knowledge of the market. He testified that the highest price during the period in question was 32¢ per pound for wool of this character. Not only was there testimony of appellant's sales manager from which the jury could have found that the maximum market price during this interval was 29¢, but appellee was an interested witness, whose recovery was predicated on his own testimony, and in other respects his testimony was directly contradictory to the testimony of the other witnesses. Under these circumstances, we think his testimony presented a fact issue to be determined by the jury. It does not, under the circumstances presented here, fall within the rule laid down in the cases cited and relied

upon by appellee; that is, that where testimony is undisputed, uncontradicted, and there are no circumstances tending to discredit or impeach it, conclusive effect should be given to it. See Luling Oil & Gas Co. v. Edwards, Tex.Civ.App., 32 S.W.2d 921; Taylor-Link Oil Co. v. Anderson, Tex.Civ.App., 92 S.W.2d 499; Great Southern Life Ins. Co. v. Dorough, Tex.Civ.App., 100 S.W.2d 772.

Undoubtedly, we think, the testimony of appellant's sales manager; the fact that appellee introduced no market reports, nor authentic market quotations during the period; that such testimony came from a vitally interested witness; and when taken in connection with other positively contradicted testimony, clearly presented a jury issue; and that the court was not authorized to render judgment based thereon without a jury finding.

For the reasons stated, the judgment of the trial court is reversed and the cause remanded for another trial.